

**PROVIDENT LAW**

Philip A. Overcash, SBN 022964
Christopher J. Charles, SBN 023148
14646 N. Kierland Boulevard, Suite 230
Scottsdale, AZ 85254
Telephone: (480) 388-3343
Facsimile: (602) 753-1270
For Court Use Only: docket@providentlawyers.com
*Attorneys for Jane Does and John Doe*

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| In the Matter of the Application of Julia Allison Baugher | Case No. 2:19-mc-00034 |
| | **REPLY MEMORANDUM IN SUPPORT OF MOTION FOR TEMPORARY RESTRAINING ORDER ENJOINING GODADDY FROM PRODUCING** |

Movants Jane Doe (Doe 1), Jane Doe (Doe 2), and John Doe (Doe 3) (together, the "Does"), through their counsel, hereby submit this Reply Memorandum in Support of their Motion for Temporary Restraining Order ("TRO") Enjoining GoDaddy from Producing, respectfully showing this Court as follows:

### I.      PROCEDURAL BACKGROUND

On November 13, 2019, the Does filed a Motion to Quash and a Motion for Temporary Restraining Order (the "Initial Motion"). *See* Doc. 4. On December 9, 2019, Applicant Julia Allison Baugher ("Baugher") filed her Response in Opposition to the Initial Motion. *See* Doc. 9. On December 19, 2019, the Does filed a Motion for Leave to file an

amended Motion to Quash which exceeds the page limitation set forth in L.R. Civ. 7.2(e) and to Stay the Briefing Schedule entered by this Court on November 27, 2019. *See* Doc. 10. Pursuant to this Court's briefing schedule entered on November 27, 2019, the Does' deadline to file a Reply in support of the Initial Motion is December 23, 2019. *See* Doc. 8.

Because no Order has been entered staying the briefing schedule in this action, and out of an abundance of caution, the Does submit the following Reply in support of their Motion for TRO contained in the Initial Motion. Because no Order has been entered permitting the Does to file an enlarged Motion to Quash, out of an abundance of caution, the Does are filing contemporaneously herewith their First Amended Motion to Quash which comports with the page limitation requirements set forth in L.R. Civ. 7.2(e).

## II.      FACTUAL BACKGROUND

The facts involved in this action have been set forth in several prior filings, and evidence relating to the same is continuing to be accrued. *See* Doc. 4; Doc. 10. As previously represented to this Court, Baugher has a lengthy history of both seeking "internet fame" through, *inter alia*, "lifestreaming" the intimate details of her personal life, and objecting to online criticism regarding the same through legal and extrajudicial means. *See id.* As set forth in the Motion for TRO contained in the Initial Motion, Baugher is now attempting to misuse the Digital Millennium Copyright Act ("DMCA") subpoena process to unmask and intimidate her anonymous critics.

In the Initial Motion, the Does described a series of recent, alarming threats of harm and harassment received by Doe 1 via email, posted online in comments on the subject web-based log (the "Blog") and on publicly-available social media pages of individuals acting in concert with Baugher. *See* Doc. 4. In the Motion for Leave and for Stay, the Does further described these threats, including attaching evidence of the same. *See* Doc. 10.

Specifically, as set forth in the Does' Initial Motion and their Motion for Leave and for Stay, just prior to the issuance of the subject subpoena (the "Subpoena"), Doe 1 received

PROVIDENT LAW

more than two dozen threatening emails sent at off hours, including an email sent on September 26, 2019 stating "I now have IP addresses locations, names, device info, and every analytic under the sun for every single one of you;" and an email sent on September 21, 2019 stating, "I can near promise that the fbi [sic] and UChicago are both now monitoring this site – so keep that in mind when posting."  *See* Declaration of Doe 1, attached as Ex. "A" to Doc. 10 ("Doe 1 Decl.") at ¶¶ 19-25.  Additional threats were issued online, in commentary on the Blog and posted to public social media accounts.  *Id*.  Those additional threats included, without limitation, threats to harm Doe 1, her family, and specifically her young daughter, as well as promises to harm and destroy the Blog, its writers, and the hundreds of individuals who have contributed to its commentary over the years.  *See id*.

Certain of those additional threats, including threats to "dox" or reveal the identities of persons allegedly affiliated with the Blog, were made on the public social media page of Christine Kelly ("Kelly"), a personal friend of Baugher.  *See id*. at ¶ 22.  For example, in September 2019, Doe 1 observed messages among Baugher and Kelly posted on Kelly's public social media page discussing the Blog, disparaging its authors, and discussing legal recourse regarding the same.  *Id*.  Also on or about September 2019, Doe 1 observed the following posts on Kelly's public social media page: (1) the statement, "I cannot wait to dox the hate site. #BeBest x #Restorative Justice" alongside an image of the cover of WIRED magazine featuring Baugher; (2) the statement, "I'm 100% shutting down the hate site for Julia, and changing laws to do so;" (3) the statement, "I am happy to report the hate site has seen the light and is scrubbing the site;" (4) the statement, "I am now the unwitting owner of an insane amount of personal data (IP, location, device, you name it – I now have it) and analytics for everyone who has hated on my best friend for ten years;" and (5) a post captioned "When you have to run Black Ops on the #JuliaAllisonPolice.  Sigh.  #HateSite" and containing the statements, "They're paranoid right now; Maybe in a few months; Gilly

is down for the count right now; We took out the main terrorist; I feel good about that. The osama bin laden [sic] is out; We did a raid; Sent in navy seals; She is GONE." *Id.* at ¶ 23. Doe 1 caused "screen shots" of each of these posts to be captured, true and correct copies of which were attached to the Doe 1 Decl. *See* Doc. 10 at pp. 25-38.

On September 23, 2019—the *day before* Baugher sent the subject DMCA takedown request—Doe 1 observed a post on Kelly's publicly available social media in which Kelly stated, "Julia doesn't get paid enough / isn't famous enough to have to deal w this crap. . . . it should be 100% legal to publish the names and photos of anyone who runs a troll blog anonymously . . . as well as ignores DMCA takedowns." Doe 1 Decl. at ¶ 24.

Kelly continued to post on her public social media page throughout the Fall of 2019 that she looked forward to "shutting down [the Blog]," among other threats directly referencing the Blog and "DMCA takedowns." *Id.* at ¶ 25 (referencing attached screen shot of post stating, "Throw a 7th project on the pile for the roll-out…shutting down Jules' hate site!"). On or about October 7, 2019, Kelly accelerated her threats on behalf of Baugher, posting the internet service provider ("ISP") addresses of individuals purportedly associated with the Blog to her public social media account. *Id.* at ¶ 26 (referencing attached screen shot of post stating, "Hate site IP addresses and locations. #RBD #Receipts" and including over 200 photos revealing ISP addresses of individuals purportedly associated with the Blog).

Based upon these issued threats, and as described in the Initial Motion, the Does reasonably fear that imminent, irreparable harm will result if the information sought in the Subpoena is disclosed.

## III.   LEGAL ARGUMENT

As set forth in the Initial Motion, to obtain a TRO, a party must establish that (1) they are likely to succeed on the merits; (2) they are likely to suffer irreparable harm in the

absence of the TRO; (3) the balance of equities tips in their favor; and (4) the issuance of the TRO is in the public interest. *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008) (setting forth standard for preliminary injunction); *Lockheed Missile & Space Co.Inc. v. Hughes Aircraft Co.*, 887 F. Supp. 1320, 1323 (N.D. Cal. 1995) ("The standard for issuing a temporary restraining order is identical to the standard for issuing a preliminary injunction."). A stronger showing on one of these four elements may offset a weaker showing on another. *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131 (9th Cir. 2011). "'[S]erious questions going to the merits' and a balance of hardships that tips sharply towards the plaintiff can support issuance of a preliminary injunction, so long as the plaintiff also shows that there is a likelihood of irreparable injury and that the injunction is in the public interest." *Id*. at 1135 (9th Cir. 2011).

The purpose of a temporary restraining order is to preserve the status quo until the Court has an opportunity to pass on the merits of a preliminary injunction. See *Granny Goose Foods, Inc. v. Brotherhood of Teamsters & Auto Truck Drivers Local No. 70*, 415 U.S. 423, 439 (1974); *Garcia v. Yonkers Sch. Dist*., 561 F.3d 97, 107 (2d Cir. 2009). A District Court may grant a temporary restraining order without notice if "specific facts in an affidavit or verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition," and the movant "certifies in writing any efforts made to give notice and the reasons why it should not be required." Fed. R. Civ. P. 65(b)(1).

The requested relief sought in connection with the Does' Motion for TRO contained in the Initial Motion is necessary to prevent irreparable loss. See Fed. R. Civ. P. 65(b)(1). The relief sought in connection with the Motion for TRO contained in the Initial Motion would also preserve the status quo by preventing GoDaddy from producing to Baugher the information requested in the Subpoena until the Court can hear and rule on the matter. As

PROVIDENT LAW

discussed herein, GoDaddy's production to Baugher will likely cause irreparable injury and loss to Doe 1, her family, Doe 2, and Doe 3.

In her Response in Opposition to the Initial Motion, Baugher did not address the Does' request for a Temporary Restraining Order and instead incorrectly represented that the Does "did not seek to enjoin GoDaddy.com, LLC beyond November 18, 2019 and that date has now passed." *See* Doc. 9 at fn 1.  Accordingly, it appears the Does' Motion for Temporary Restraining Order is unopposed by Baugher.  This Court should also grant the Does' Motion for Temporary Restraining Order because the Does have demonstrated that irreparable harm will result if the injunctive relief sought is not granted, and they have further demonstrated that little or no harm will result to Baugher if the status quo is maintained until such time as this Court considers the merits underlying their request and issues its ruling on the same.  *See* Doc. 4; Doc. 10.

**IV.     CONCLUSION**

For the reasons set forth herein, the Does respectfully request that this Court enter a Temporary Restraining Order enjoining GoDaddy from producing the information requested in the Subpoena until such time as this Court can hear the merits of this matter and issue its ruling thereon.

**RESPECTFULLY SUBMITTED** this 23rd day of December, 2019.

**PROVIDENT LAW®**

*/s/Philip A. Overcash*
Philip A. Overcash
Christopher J. Charles
14646 N. Kierland Boulevard, Suite 230
Scottsdale, AZ 85254
*Attorneys for Jane Does and John Doe*

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on December 23, 2019, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrants:

Bradley D. Shwer, Esq.
Sara R. Witthoft, Esq.
ThorpeShwer
bshwer@thorpeshwer.com
switthoft@thorpeshwer.com
*Attorneys for Applicant Julia Allison Baugher*

<u>/s/ Ann Washington</u>
Ann Washington

