**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Julia Allison Baugher,<br><br>   Plaintiff,<br><br>v.<br><br>GoDaddy.com LLC,<br><br>   Defendant. | No. MC-19-00034-PHX-JJT<br><br>**ORDER** |

At issue is the Amended Motion to Quash Subpoena Issued Pursuant to 17 U.S.C. § 512(h) (Doc. 22, Mot.), to which Applicant Julia Allison Baugher filed a Response (Doc. 24, Resp.) and Movants filed a Reply (Doc. 25, Reply).

**I.   BACKGROUND**

Julia Allison Baugher is a writer whose work has been published in many periodicals and a commentator who has appeared in a variety of television programs. She has built a strong following online, including on social media platforms, and she claims she has a copyright in all her work and the images she has posted on social media. In 2019, a group of online bloggers (the "Does") posted certain of Baugher's images and work—including a book proposal with pre-publication manuscript—on their blog without her permission for the purpose of inviting criticism of it. Baugher claims these posts constituted copyright infringement. On September 24, 2019, after Baugher learned of the posts, she sent a take-down notice under the Digital Millennium Copyright Act ("DMCA")—specifically, 17 U.S.C. § 512(c)—requesting that the blog's registrar, GoDaddy.com, LLC,

remove the accused blog posts. GoDaddy took down the blog posts on September 27, 2019, without any DMCA counter-notification from the Does requesting put-back of the removed posts.

On October 7, 2019, Baugher filed an Application with this Court for Issuance of a Subpoena under 17 U.S.C. § 512(h) to uncover the identities of the Does (Doc. 1), and the Court issued the Subpoena (Doc. 2). The Does then filed a Motion to Quash (Doc. 4) and, with leave of Court, an Amended Motion to Quash (Doc. 22). The Court now resolves the Amended Motion to Quash.

**II.    ANALYSIS**

Under 17 U.S.C. § 512(h), a copyright owner may seek a subpoena in U.S. District Court "for identification of an alleged infringer," so long as the subpoena request includes a copy of the take-down notice made pursuant to § 512(c)(3)(A), a proposed subpoena, and a sworn declaration that the subpoena is sought "to obtain the identity of an alleged infringer and that such information will only be used for the purpose of protecting rights under this title." Baugher met these requirements, and the Court issued the Subpoena. (Docs. 1, 2.)

The Does' principal argument in their Amended Motion to Quash is that the Court should look behind Baugher's § 512(c)(3)(A)(v) attestation of a good faith belief that the Does' use of Baugher's work and images infringed her copyright in them and examine whether the Does' use was fair use and thus not infringing. As Baugher argues in her Response, §§ 512(c)(3)(A), (h)(1), and (h)(2) do not provide for such a review; attestation of a good faith belief of infringement is sufficient to send a take-down notice and, based on the notice, request that the Court issue a subpoena.[1]

---

[1] If the Does wished to challenge Baugher's good faith belief that their use of Baugher's work constituted copyright infringement at the take-down notice stage, the DMCA includes a provision allowing the Does to send a counter-notification to that effect to GoDaddy, in which instance GoDaddy would have been required to put back the material removed from the internet within 14 days unless Baugher filed an action in court. *See* 17 U.S.C. § 512(g). Baugher states the Does did not engage in the counter-notification process or challenge Baugher's attestation of copyright infringement at the take-down notice stage.

A.   **The Framework for Resolving a Fed. R. Civ. P. 45 Motion to Quash where the Movant Contends a DMCA Subpoena Seeks Information Protected by the First Amendment**

In their Motion, the Does also argue that disclosure of their identities in compliance with the Subpoena would violate their First Amendment right to speak anonymously, and they therefore request that the Court quash the Subpoena under Federal Rule of Civil Procedure 45(d)(3)(A)(iii). Section 512(h)(6) of the DMCA provides that "the procedure for issuance and delivery of the subpoena . . . shall be governed to the greatest extent practicable by those provisions of the Federal Rules of Civil Procedure governing the issuance, service, and enforcement of a subpoena duces tecum." Rule 45(d)(3)(A)(iii) states that a district court must quash a subpoena that "requires disclosure of privileged or other protected matter." Thus, as several District Courts in the Ninth Circuit have concluded, "a motion to quash a DMCA subpoena may properly raise an objection on the basis that the subpoena would require disclosure of matter protected by the First Amendment"—here, the Does' identities. *Signature Mgmt. Team, LLC v. Automattic, Inc.*, 941 F. Supp. 2d 1145, 1152 (N.D. Cal. 2013).

Whether the Does engaged in copyright infringement is relevant in resolving the Motion to Quash for several reasons. First, the title of § 512(h), "Subpoena to identify infringer," indicates the purpose of the subpoena; if the Does were not infringers, the § 512(h) subpoena is not properly aimed at them.

Second, resolving a motion to quash under Rule 45 ordinarily requires a balancing of the need for disclosure of the requested information against the target of the subpoena's interests in protecting disclosure. Here, the Does seek protection from disclosure under the First Amendment because, as a general proposition, the First Amendment protects the right to speak anonymously. *McIntyre v. Ohio Elections Comm'n*, 514 U.S. 334, 342 (1995); *see also In re Anonymous Online Speakers*, 661 F.3d 1168, 1173 (9th Cir. 2011) (stating the right to speak anonymously applies equally to online speech). But "to the extent that anonymity is used to mask copyright infringement or to facilitate such infringement by

other persons, it is unprotected by the First Amendment." *Arista Records, LLC v. Doe 3*, 604 F.3d 110, 118 (2d Cir. 2010); *see also Harper & Row Publishers, Inc. v. Nation Enters.*, 471 U.S. 539, 568 (1985) (holding that First Amendment was not a defense to copyright infringement claim); *cf. In Re Verizon Internet Servs., Inc.*, 257 F. Supp. 2d 244, 260 (D.D.C. 2003) (stating "there is some level of First Amendment protection that should be afforded to anonymous expression on the Internet, even though the degree of protection is minimal where alleged copyright infringement is the expression at issue") (*reversed in the outcome*, 351 F. 3d 1229 (D.C. Cir. 2003)); *Art of Living Found. v. Does 1-10*, 2011 WL 5444622, at *6 (N.D. Cal. Nov. 9, 2011) (stating "evidence of copyright infringement does not *automatically* remove the speech at issue from the scope of the First Amendment").

      The core framework question the Does' Motion presents is whether § 512(h)(6) and its command for the Court to apply Rule 45 "to the greatest extent practicable" in enforcing DMCA subpoenas means that the Does' Motion triggers a burden on Baugher to demonstrate a *prima facie* claim of copyright infringement, or, as Baugher argues (Resp. at 24-25), whether the text of the DMCA—in particular, §§ 512(c)(3)(A), (h)(1), and (h)(2)—relieves Baugher of any such burden by requiring only an attestation of a good faith belief of copyright infringement. As the court in *Signature Management Team* found, it is the former. 941 F. Supp. 2d at 1157-58 (stating that the court must determine whether the party seeking the information under the DMCA demonstrated a *prima facie* claim of copyright infringement as part of a balancing test applied to resolve a motion to quash). Indeed, even the case Baugher cites (Resp. at 12) to support her position that the Court should not analyze whether the target of the subpoena engaged in copyright infringement, *In re Subpoena Issued Pursuant to the Digital Millennium Copyright Act to:43SB.com*, stated that "[t]he party seeking a subpoena must also make a *prima facie* showing of copying" and proceeded to resolve that question. 2007 WL 4335441, at *4 (D. Idaho Dec. 7, 2007).

Whether a movant engaged in copyright infringement is critical to assessing the scope of First Amendment protection the movant is entitled to as part of the balancing test used to resolve a motion to quash under Rule 45. And Congress explicitly directed courts to apply Rule 45 "to the greatest extent practicable" in § 512(h)(6). As the *Signature Management Team* court stated, the provisions of the DMCA "cannot be read to authorize enforcement of a DMCA subpoena in violation of the First Amendment." 941 F. Supp. 2d at 1153. Put another way, construing §§ 512(h)(1) and (h)(2) as granting an automatic right to Baugher to obtain the Does' identities by subpoena based on her attestation of a good faith belief of the Does' copyright infringement would render the Does' ability to quash the subpoena on constitutional grounds, as provided for in § 512(h)(6) and Rule 45, a nullity.

### B. The Motion to Quash

In instances in which online speech raises at least some constitutional protections, courts in the Ninth Circuit have applied "a two-part test for determining whether to allow discovery seeking the identity of an anonymous defendant: (1) The plaintiff must produce competent evidence supporting a finding of each fact that is essential to a given cause of action; and (2) if the plaintiff makes a sufficient evidentiary showing, the court must compare the magnitude of the harms that would be caused to the competing interests by a ruling in favor of the plaintiff and by a ruling in favor of the defendant." *Art of Living*, 2011 WL 5444622, at *7 (citing *Highfields Cap. Mgmt., L.P. v. Doe*, 385 F. Supp. 2d 969, 975-76 (N.D. Cal. 2005)). Put more directly, if the Does' speech raises First Amendment concerns, the Court will evaluate whether Baugher "demonstrated a *prima facie* case of copyright infringement" and conduct "a balancing of harms." *Signature Mgmt. Team*, 941 F. Supp. 2d at 1157. But "[t]he degree of scrutiny varies depending on the circumstances and the type of speech at issue." *Id.* at 1154. Where the nature of the speech is public criticism, even if not explicitly political or religious, and disclosure of an anonymous speaker's identity could have a chilling effect on such public criticism, then at least some First Amendment concerns are at stake. *Art of Living*, 2011 WL 5444622, at *6-7.

### 1. Nature of the Speech

Similar to the circumstances in *Signature Management Team*, in this case "the alleged infringement involved the anonymous online posting of copyrighted material in the context of a critical campaign" against the individual allegedly holding copyrights to the material. 941 F. Supp. 2d at 1156. Thus, "although [the Does'] speech in question, posting a verbatim copy of copyrighted work, was neither political nor religious, it at least raises significant constitutional concerns." *Id.* at 1157 (citing *Art of Living*, 2011 WL 5444622, at *6).

### 2. *Prima Facie* Claim of Copyright Infringement

"To establish a *prima facie* case of copyright infringement, a party must show (1) ownership of a valid copyright and (2) violation by the alleged infringer of at least one of the exclusive rights granted to copyright owners by the Copyright Act." *Id.* (citing 17 U.S.C. § 501(a); *UMG Recordings, Inc. v. Augusto*, 628 F.3d 1175, 1178 (9th Cir. 2011)). In this context, Baugher "must adduce competent evidence" of each fact essential to a showing of copyright infringement. *Highfields*, 385 F. Supp. 2d at 975-76. If a certificate of copyright registration is made within five years of the first publication of a work, it "shall constitute *prima facie* evidence of the validity of the copyright and of the facts stated in the certificate." 17 U.S.C. § 410(c).

Baugher did not register a copyright in the 81-page book proposal with 54-page unpublished manuscript—entitled "Experiments in Happiness"—and two of the 22 photos that the Does allegedly posted on their blog prior to the posting, so the Court will refer to the evidence, to the extent it is available, in evaluating Baugher's copyright infringement claim with regard to that material.[2] In August 2019, Baugher did register a copyright in 20

---

[2] Many of the cited decisions resolving a motion to quash were made in the context of discovery in an ongoing lawsuit, so evidence was available for the court to review in deciding the motion. *See, e.g.*, *Art of Living*, 2011 5444622, at *1. While pre-litigation parties such as those here have generally gathered less evidence, the Court notes it is often called on to resolve discovery disputes with less than fulsome evidence. Moreover, the parties fully briefed the issues related to Baugher's claim of copyright infringement and the Does' defense of fair use. The Court thus finds it has sufficient information to resolve the Motion to Quash at issue here.

of the 22 photos the Does allegedly posted, which in and of itself is *prima facie* evidence of copyright validity for those 20 photos.

"As a general rule, copyright vests initially in the author or authors of a work. 17 U.S.C. § 201(a). Copyright protection subsists from the moment the work is 'fixed in any tangible medium of expression.' 17 U.S.C. § 102(a). Registration is not a prerequisite to valid copyright, although it is a prerequisite to suit. 17 U.S.C. § 408(a), § 411." *S.O.S., Inc. v. Payday, Inc.*, 886 F.2d 1081, 1085 (9th Cir. 1989). The Does do not raise any meritorious legal challenges to Baugher's copyright in her work and images that they allegedly posted on their blog. They argue generally that Baugher did not register or apply to register a copyright in the book proposal or manuscript (Mot. at 14), but that is not required to hold a valid copyright. And there is no dispute that Baugher's work and images have the requisite modicum of creativity so as to be considered copyrightable expression. *See Feist Publ'ns v. Rural Tel. Serv. Co.*, 499 U.S. 340 (1991). Baugher has thus shown sufficient *prima facie* evidence of copyright ownership in the work and images.

Likewise, the Does point to no evidence that they did not reproduce Baugher's work and images on the blog. While the Does' briefing contains generalized denials, no evidence before the Court supports those denials.

### 3. Fair Use

The Does assert instead that any use they made of Baugher's work and images was fair use, which the Copyright Act, 17 U.S.C. § 107, explains is permissible as a non-infringing use. *Lenz v. Universal Music Corp.*, 815 F.3d 1145, 1152 (9th Cir. 2016). The Ninth Circuit has characterized fair use as "uniquely situated in copyright law so as to be treated differently than traditional affirmative defenses." *Id.* at 1153. As it pertains to the DMCA, "because 17 U.S.C. § 107 created a type of non-infringing use, fair use is 'authorized by law' and a copyright holder must consider the existence of fair use before sending a takedown notification under § 512(c)." *Id.* Thus, the copyright infringement examination implicates the fair use defense the Does have raised in their Motion, albeit in a slightly different way than they argued. But this makes sense, because "First Amendment

concerns are . . . addressed in the copyright field through the 'fair use' doctrine." *L.A. News Serv. v. Tullo*, 973 F.2d 791, 795 (9th Cir. 1992). Although fair use "is not an infringement" but rather "a right," "the burden of proving fair use is always on the putative infringer." *Lenz*, 815 F.3d at 1152-53 (quoting *Bateman v. Mnemonics, Inc.*, 79 F.3d 1532, 1542 n.22 (11th Cir. 1996)).

The Copyright Act, 17 U.S.C. § 107, provides that

> the fair use of a copyrighted work, . . . for purposes such as criticism [or] comment. . . , is not an infringement of copyright. In determining whether the use made of a work in any particular case is a fair use the factors to be considered shall include—
>
> (1) the purpose and character of the use, including whether such use is of a commercial nature or is for nonprofit educational purposes;
> (2) the nature of the copyrighted work;
> (3) the amount and substantiality of the portion used in relation to the copyrighted work as a whole; and
> (4) the effect of the use upon the potential market for or value of the copyrighted work.
>
> The fact that a work is unpublished shall not itself bar a finding of fair use if such finding is made upon consideration of all the above factors.

*See also Lenz*, 815 F.3d at 1152.

With regard to the first factor, the Does contend that their use of the work and images was for the purpose of criticism or comment and that it was non-commercial, but they have not proffered evidence to support those arguments. Referring to the evidence produced by Baugher, by way of sample screen shots of the blog, most of Baugher's work was posted without substantial comment or criticism by the Does. (*E.g.*, Doc. 9-2 at 87-90, evidence of the Does' posting of entire book proposal.) The essence of fair use for the purpose of comment or criticism is the comment or criticism. Posting a work and implicitly inviting comment or criticism is the same as simply copying the work; any work made public will almost always inspire an opinion in the reader, but the reader's implicit opinion is not the same as comment or criticism formed and made by the blogger who copies the

copyright-protected work. In short, the Does' use was not transformative, as required to be fair use. *Monge v. Maya Magazines, Inc.*, 688 F.3d 1164, 1174-75 (9th Cir. 2012). Moreover, to the extent the Does' comments and criticism of Baugher's photos could be considered transformative, the evidence shows it was connected to solicitations by the Does for money. (Doc. 24-1 at 4-13.) The Does, who have the burden to show fair use, point to no evidence that the purpose and character of their use of Baugher's work and images supports a finding that it was fair use.

As for the second factor, the nature of the work and images the Does posted, the Court agrees with Baugher that the book proposal, manuscript, and images had a high level of creativity and were unpublished—or distributed on a limited basis by Baugher herself—both of which weigh against a finding of fair use. *Monge*, 688 F.3d at 1177; *see also Harper & Row Publishers, Inc. v. Nation Enters.*, 471 U.S. 539, 555 (1985) (generally, "the author's right to control the first public appearance of his undisseminated expression will outweigh a claim of fair use"). The Does produced no substantial evidence to the contrary.

The third factor also weighs against a finding of fair use, because the evidence before the Court shows the Does reproduced the materials in their entirety. As for the fourth factor, the Does again proffer no evidence, as was their burden, to show their use had no effect on the value of Baugher's book proposal, manuscript, and photos; the Does engage at best in speculative argument. *See Monge*, 688 F.3d at 1181. For all these reasons, in the context of their Motion to Quash, the Does fail to demonstrate that their use of Baugher's work was fair use and thus not infringing.

### 4. Balancing of Harms

Because Baugher has successfully demonstrated a *prima facie* claim of copyright infringement and the Does have not demonstrated fair use, the Does have little, if any, First Amendment protection against disclosure of their identities. This is made clear by the DMCA itself, which allows Baugher to obtain a subpoena to uncover the Does' identities as alleged copyright infringers and in the absence of a showing that disclosure is protected under Federal Rule of Civil Procedure 45(d)(3)(A)(iii). Baugher's interest in discovering

the Does' identities is clear in the context of bringing a suit for copyright infringement. As a result, the Court must find that Baugher is entitled to uncover the Does' identities. The Does' fears that that disclosure of their identities will be misused is addressed both by the DMCA itself, which states the identities will only be used for the limited purpose of protecting the applicant's copyright, 17 U.S.C. § 512(h)(2)(C), and Baugher's attestation to the same (Doc. 1-1 at 3).

**IT IS THEREFORE ORDERED** denying the Amended Motion to Quash Subpoena Issued Pursuant to 17 U.S.C. § 512(h) (Doc. 22).

**IT IS FURTHER ORDERED** directing the Clerk of Court to close this matter.

Dated this 22nd day of October, 2021.

Honorable John J. Tuchi
United States District Judge